**GABRIEL DEL VIRGINIA**
**LAW OFFICES OF GABRIEL DEL VIRGINIA**
**30 WALL STREET 12TH FLOOR**
**NEW YORK, NY 10005**
**212-371-5478**
**Fax : 212-371-0460**

Email: ***gabriel.delvirginia@verizon.net***

*Proposed Counsel to Debtor StoryFile, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>STORYFILE, INC.[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 24-22398-shl |

### DEBTOR'S MOTION FOR (A) ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES; (II) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (III) APPROVING STALKING HORSE BIDDER; (IV) SCHEDULING BID DEADLINE, AUCTION DATE, AND SALE HEARING DATE; AND (V) APPROVING FORM OF NOTICE THEREOF; AND (B) ENTRY OF AN ORDER AFTER THE SALE HEARING (I) AUTHORIZING DEBTOR TO SELL ITS ASSETS; AND (II) AUTHORIZING DEBTOR TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF

StoryFile, Inc. ("**StoryFile**" or "**Debtor**"), debtor in possession herein, by and through its undersigned counsel, as and for the motion ("**Motion**"), and pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") 2002, 6004, 9007 and 9014 and Rules 6004-1, 6006-1 and 9013-1 of the Local Rules ("**Local Rules**") of Bankruptcy Practice and Procedure of the United States Bankruptcy

---

[1] The last four digits of Debtor's federal tax identification number are 7979.

Court for the Southern District of New York ("**Bankruptcy Court**") seeking the following relief:

(I)     following a hearing to be scheduled (the "**Bidding Procedures Hearing**"), entry of an order (the "**Bidding Procedures Order**") substantially in the form filed herewith (a) approving bidding procedures; (b) approving procedures for the assumption and assignment of executory contracts and unexpired leases and proposed cure costs related thereto; (c) approving the Stalking Horse Bidder (as defined herein); (d) scheduling a bid deadline, auction date, and sale hearing date; (e) approving the form and method of notice thereof; and (f) granting related relief; and

(II)    following a hearing (the "**Sale Hearing**")  to be scheduled by the Court in the Bidding Procedures Order, entry of an order (the "**Sale Order**") substantially in the form filed herewith (a) authorizing the Debtor to sell substantially all of its assets (the "**Assets**" or the "**Purchased Assets**") to the Stalking Horse Bidder or other Successful Bidder (as defined herein) free and clear of liens, claims and encumbrances; (b) authorizing the Debtor to assume and assign certain executory contracts and unexpired leases to the Stalking Horse Bidder or other Successful Bidder; and (c) granting related relief.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The statutory predicates for the relief sought herein are sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, and 9014 and Local Rules 6004-1, 6006-1 and 9013-1.

## BACKGROUND

3.      Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 5, 2024 ("**Petition Date**").

4.      No request has been made for the appointment of a trustee or examiner, and a creditors' committee has not been appointed by the Office of the United States Trustee for the Southern District of New York ("**U.S. Trustee**").

5.      StoryFile continues in possession of its assets and is operating and managing its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      StoryFile is a private conversational video artificial intelligence company that allows individuals or organizations to capture, preserve, share, and consume stories, expertise, and experiences using natural language conversations through its proprietary and innovative conversational artificial intelligence platform.

7.      StoryFile is a start-up with highly promising technology and business model. StoryFile was able to raise its seed funding initially from friends and family and later from other non-institutional investors and grew rapidly in 2021 and 2022.

3

8.     StoryFile's focus on growth exceeded its ability to sustainably fund that growth and found itself unable to keep pace with its working capital requirements. Despite additional fundraising and new revenue streams to replenish its working capital, StoryFile continued to hemorrhage cash, coupled with increased payables and loan debt, resulting in insurmountable financial strain, compelling StoryFile to seek bankruptcy protection to find a sustainable path forward.  However, emergent relief is necessary to preserve  the enterprise value of the Debtor's business as a going concern.  Such  relief will enable StoryFile to continue in business to serve the community and provide income to StoryFile's employees who rely on their jobs at StoryFile to pay their own bills.

9.     Additional information about the Debtor's business and the circumstances leading to the commencement of this bankruptcy case can be found in the Declaration of James Fong filed at Docket. No. 9.

**StoryFile's Chapter 11 Case**

10.     On May 24, 2024, the Court entered its Interim Order for (I) Authority to (A) Obtain Post-Petition Financing, (B) Use Cash Collateral, (C) Grant Liens and Provide  Superpriority  Administrative  Expense  Status,  (D)  Grant  Adequate Protection, (E) Modify the Automatic Stay, and (F) Schedule Final Hearing, and (II) Related Relief (B) Granting Adequate Protection to Prepetition Secured Parties, (C) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) and (D) Granting Related Relief [Doc. 17] (the "**Interim DIP Lending Order**").

11.     On June 27, 2024, the Court entered its Final Order for (I) Authority to (A) Obtain Post-Petition Financing, (B) Use Cash Collateral, (C) Grant Liens and

Provide Superpriority Administrative Expense Status, (D) Grant Adequate Protection, and (E) Modify the Automatic Stay and (II) Related Relief  Granting (A) Adequate Protection to Prepetition Secured Parties and (B) Granting Related Relief [Doc. 27] (the "**Final   DIP Lending Order**" and together with the Interim DIP Lending Order, the "**DIP Order**").

12.     Among other things, the DIP Order approved post-petition financing from the Debtor's pre-petition lender Key 7 Investment Company, Inc. (the "**Lender**") to continue operations while the Debtor conducted a sale process in accordance with the milestones set forth in the DIP Order (the "**Milestones**").  In part, the Milestones provide that Debtor is to have caused (i) the entry of an order approving bidding procedures by August 19, 2024, (ii) the occurrence of an auction (if necessary) by September 6, 2024, (iii) entry of an order approving the sale by September 23, 2024, and (iv) closing of the sale by October 11, 2024.

### The Proposed Sale Process

13.     Prior to commencement of this bankruptcy case and continuing afterwards, the Debtor has made good faith efforts to identify potential purchasers of the Assets.  Specific actions include identifying and conferring with potential sources of capital, which efforts are more expansively described in the Declaration of James Fong submitted in support hereof.

14.     In light of both its limited resources and the limited market that exists for the Assets, the Debtor does not intend to engage an investment banker.  However, acknowledging its fiduciary obligation to all creditors and parties in interest, the Debtor has and will continue to actively market the Assets to potential bidders.

Financial information related to the Debtor's business and its Assets has been compiled, and subject to agreements protecting the confidential information pertaining to the Debtor's business and its Assets, potential bidders will be given access to information.  In addition, management of the Debtor has met and will continue to meet with potential bidders to address any questions.

15.     The Debtor (without input of the Lender) considered a number of proposals for stalking horse bidders including a proposal submitted by the Lender (also referred to as the "**Stalking Horse Bidder**").  After careful consideration of these proposals, the Debtor determined the Stalking Horse Bidder's proposal to be the best. A summary of the bid is below (the "**Stalking Horse Bid**"):

> a.     Initial credit bid of outstanding balance of Prepetition Secured Obligations (as defined in the DIP Order) with ability to increase credit bid up to outstanding balance of DIP Loan as of the date of an auction plus payment of cash of at least $10,000.00.

> b.     Assumption of employee wage claims for earned, but unpaid wages with an aggregate cap of $$200,000.00 to be paid in 12 equal monthly installments following closing.

> c.     Assumption of certain executory contracts with cure costs not to exceed $300,000.00 in the aggregate.

> d.     No break-up fee.

16.     Attached as **Exhibit A** is the Lender's proposed Asset Purchase Agreement (the "**APA**").

17.     The Stalking Horse Bidder is a minority shareholder (either directly or indirectly) of the Debtor, with an ownership interest of approximately 3.87% of outstanding shares.  Neither the Stalking Horse Bidder nor any of its officers or directors has ever been an officer or director of the Debtor.

18.     The Stalking Horse Bidder is a shareholder (either directly or indirectly) in a now-defunct company named Maven Arena, Inc. holding approximately 18.91% of the outstanding shares of the company.  The Debtor's schedules indicate Maven Arena, Inc. is indebted to the Debtor in the approximate amount of $500,000.00, but the Debtor does not believe this amount is collectible.

19.     To ensure the Debtor's estate realizes the maximum value for all of its assets, the Debtor intends to test the marketplace and will continue to make contact with potential buyers to solicit bids in accordance with the procedures outlined herein.  As a result, the Stalking Horse Bid remains subject to higher or better bids.

**RELIEF REQUESTED**

20.     By this Motion, the Debtor seeks entry of an order (i) approving the bidding procedures (the "**Bidding Procedures**")[2] substantially in the form attached to the Bidding Procedures Order; (ii) approving procedures for the assumption and assignment of executory contracts and unexpired leases; (iii) approving the Stalking Horse Bidder; (iv) scheduling a bid deadline, auction date, and Sale Hearing; and (v) approving the form notice hereof.  The Bidding Procedures contemplate the following schedule:

| Bid Deadline | September 30, 2024 as the last date by which any Potential Bidder may deliver its bid for the Assets. |
| --- | --- |
| Qualified Bids Determined | October 3, 2024 as the date by which the Debtor must determine whether a bid is a Qualified Bid and shall notify each Potential Bidder whether they are a Qualified Bidder. |

---

[2] Capitalized terms not defined herein shall have the meaning assigned to them in the Bidding Procedures.

| Auction Date | October 7, 2024 as the deadline by which the auction (if any) is to be conducted |
|---|---|
| Successful Bidder Designated | October 9, 2024 as the deadline by which the Debtor files notice of the Winning Bidder |
| Auction Objection Deadline | October 11, 2024 as the deadline by which any party in interest must file any objection to the manner in which the auction was conducted and the successful bidder was selected. |
| Sale Approval Date | October 16, 2024 as the deadline by which the Sale Order is to be entered |
| Sale Closing Deadline | October 31, 2024 as the deadline by which the sale of substantially all of the Debtor's assets is to close |

21.     In addition, the Debtor seeks (after the Sale Hearing) entry of the Sale Order after the Sale Hearing (a) authorizing the sale of the Assets to the Successful Bidder free and clear of all liens, claims, and encumbrances, with the Successful Bidder being deemed a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases which may be designated as Assigned Contracts, and (c) granting certain other relief.

A.     **Proposed Bidding Procedures**

22.     Pursuant to this Motion, the Debtor seeks to sell substantially all of its Assets, as well as to assume and assign certain executory contracts and unexpired leases.  Bankruptcy Rule 6004(f) provides for sales of property outside the ordinary course of business by private sale or auction.  Good cause exists to sell the Assets to the Successful Bidder after conducting the Auction. The Auction conducted substantially in accordance with the Bidding Procedures will allow the Debtor to obtain the highest and best offer for the Assets which will maximize the value of the Assets for the benefit of the Debtor's estate and its creditors.

8

23.     The Bidding Procedures attached to the Bid Procedures Order will give interested parties a reasonable opportunity to evaluate whether to submit a bid for the Assets.  The Bidding Procedures will also ensure the Debtor pursues a reasonable marketing and sale process to maximize value.  As such, the Debtor requests the Court enter the proposed Bidding Procedures Order submitted herewith and approve the Bidding Procedures.

**B.    Approval of Sale Notice Procedures**

24.     Bankruptcy Rule 2002(a) and (c) requires the Debtor to notify its creditors of the proposed sale of the Assets, including a disclosure of the time and place of the Auction, the terms and conditions of the sale, and the deadline for filing any objections thereto. The proposed sale notice (the "**Sale Notice**") attached hereto as **Exhibit B** contains the type of information required under Bankruptcy Rule 2002(c), and also includes information on the Bidding Procedures. The Debtor's proposed Sale Notice procedures are as follows:

(i)     The Debtor shall serve the Sale Notice within five (5) business days after the entry of the Bidding Procedures Order, upon all parties on the Debtor's Master Service List, and, for the avoidance of doubt: (a) counsel to the Lender; (b) the United States Trustee; (c) all other parties known to the Debtor who have or may have asserted liens, claims, encumbrances, or interests in or against any of the Assets; (d) the Debtor's twenty (20) largest unsecured creditors (on a consolidated basis); (e) all of the Debtor's creditors as required by Bankruptcy Rule 2002(a)(2); (f) federal, state, and local taxing authorities; (g) all of the counterparties to the executory contracts and unexpired leases as set forth on Schedule 1 to the Cure Notice (defined below) as may be amended, modified, or supplemented; (i) all parties that have requested notice pursuant to Bankruptcy Rule 2002; and (j) all parties known to have expressed an interest in a transaction with respect to all or a part of the Assets.

(ii)    Any objections to the relief requested in this Sale Motion as relates to the sale of the Assets to the Successful Bidder (a "**Sale Objection**") must: (a) set forth in writing and describe with specificity the factual and legal basis for the Sale Objection; (b) comply with the Bankruptcy Rules and Bankruptcy Local Rules; and (c) be filed with the Clerk of the Court no later than September 4, 2024 at 5:00 p.m. (prevailing Eastern Time) or such other date as determined by the Court and set forth in the Bidding Procedures Order (the "**Sale Objection Deadline**").

(iii)   The failure of any person or entity to file a Sale Objection by the Sale Objection Deadline shall be deemed consent to the sale of the Assets to the Successful Bidder. Further, the failure to file a Sale Objection by the Sale Objection Deadline shall be a bar, at the Sale Hearing or thereafter, to (a) any objection to the Sale Motion; (b) any objection to the sale of the Assets free and clear of an liens, claims, and encumbrances; and (c) any objection to the Debtor's consummation and performance of an Asset Purchase Agreement with the Successful Bidder, as applicable.

(iv)   If a Sale Objection is timely filed by the Sale Objection Deadline and the relevant parties are unable to resolve the Sale Objection prior to the commencement of the Sale Hearing, such Sale Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by the Court.

25.    The Debtor submits that the Sale Notice to be provided and the method of service proposed herein constitute good, proper and adequate notice of the sale of the Assets and the proceedings to be had with respect thereto. This information will enable interested parties to participate in the Auction and Sale Hearing if they choose. Accordingly, the Debtor requests that the Court approve the form and content of, and procedures related to, the Debtor's proposed Sale Notice.

## C.   <u>Approval of Cure Notice Procedures</u>

26.    To facilitate and effectuate the sale, the Debtor will be required to assume and assign to the Stalking Horse Bidder or other Successful Bidder certain executory contracts and unexpired leases (the "**Assigned Contracts**"). The proposed cure notice (the "**Cure Notice**") attached hereto as **Exhibit C** contains detailed

information regarding the procedures with respect to the potential Assigned Contracts and affords counterparties to the executory contracts and unexpired leases reasonable notice and opportunity to object. The Debtor's proposed Cure Notice procedures are as follows:

(i)     The Debtor shall cause the Cure Notice to be served to any counterparties to the Debtor's executory contracts and unexpired leases that may be assumed and assigned as Assigned Contracts, and as set forth in Schedule 1 attached to the Cure Notice, not later than five (5) business days after entry of the Bidding Procedures Order. The Cure Notice shall provide the counterparties to such executory contracts and unexpired leases with notice of the amount that the Debtor believes must be cured upon assumption and assignment as required under Bankruptcy Code section 365 (the "**Cure Amount**").

(ii)    Any objections to the assumption and assignment of any executory contract or unexpired lease identified in the Cure Notice or to the Cure Amounts set forth in the Cure Notice (a "**Contract Objection**"), must: (a) set forth in writing and describe with specificity the factual and legal basis for the Contract Objection; (b) comply with the Bankruptcy Rules and Bankruptcy Local Rules; (c) and be filed with the Clerk of the Court no later than September 4, 2024 at 5:00 p.m. (prevailing Eastern Time), or such other date as determined by the Court and set forth in the Bidding Procedures Order (the "**Contract Objection Deadline**").

(iii)   If a counterparty to an executory contract or unexpired lease set forth on Schedule 1 of the Cure Notice fails to file a Contract Objection by the Contract Objection Deadline, then the Cure Amount set forth in the Cure Notice will be binding upon the contract counterparty, and all parties in interest, for all purposes in this case and otherwise. All such counterparties to those executory contracts and unexpired leases on Schedule 1 of the Cure Notice will: (a) be forever barred from objecting to the Cure Amounts with respect to such executory contracts and unexpired leases and the Cure Amounts identified in the Cure Notice with respect to such executory contracts and unexpired leases shall be the only amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults thereunder if the Stalking Horse Bidder or other Successful Bidder ultimately decides to have such executory contracts and unexpired leases assumed by the Debtor and assigned to it as Assigned Contracts; (b) be deemed to have consented to the assumption and assignment if the Stalking Horse Bidder or other Successful Bidder designates such contract or lease as an Assigned

11

Contract; and (c) be forever barred and estopped from asserting or claiming against the Debtor, the Stalking Horse Bidder, or other Successful Bidder, as applicable, that any additional amounts are due, other defaults exist, other conditions to assignment must be satisfied under such executory contracts or unexpired leases, or that there is any objection or defense to the assumption and assignment.

(iv)     In the event that the Debtor and the non-debtor counterparty cannot resolve the Cure Objection, the Debtor may segregate the disputed Cure Amount (each, a "**Disputed Cure Amount**") pending the resolution of such dispute by the Court or mutual agreement of the parties.

(v)      If a counterparty to an executory contract or unexpired lease set forth on Schedule 1 of the Cure Notice timely files a Contract Objection, whether based on Cure Amount or any other alleged cause or claim, then, to the extent the relevant parties are unable to resolve the Contract Objection prior to the commencement of the Sale Hearing, such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by the Court.

(vi)     If at any time after the Cure Notice is served (but prior to the sale pursuant to any Stalking Horse Agreement or other Asset Purchase Agreement) the Debtor: (a) amends Schedule 1 to the Cure Notice and include additional executory contracts or unexpired leases; or (b) receives notice from the Stalking Horse Bidder or Successful Bidder that additional prepetition executory contracts and or unexpired leases are to be designated as Assigned Contracts under the Stalking Horse Agreement or other Asset Purchase Agreement, then the Debtor shall serve a supplemental cure notice (a "**Supplemental Cure Notice**") by first class mail, facsimile, electronic transmission, or overnight mail on the contract counterparty (and its attorney, if known) to each such contract (a "**Previously Omitted Contract**") within three (3) business days of the amendment to the Cure Notice, or the receipt of notice of designation as an Assigned Contract. Each Supplemental Cure Notice shall set forth the following: (i) the name and address of the contract counterparty; (ii) notice of the proposed effective date of the assignment (subject to the right of the Debtor and the Stalking Horse Bidder or Successful Bidder to withdraw such request for assumption and assignment of the Assigned Contract to closing); (iii) identification of the Assigned Contract; and (iv) the Cure Amount, if any.

(vii)    Unless the contract counterparty to the Previously Omitted Contract properly files a Contract Objection to the Supplemental Cure Notice within fourteen (14) days of service of the Supplemental Cure Notice, the Debtor shall obtain an order of the Court fixing the Cure Amounts

and approving the assumption and assignment of the Previously Omitted Contract as an Assigned Contract. If a Contract Objection is timely filed and served with respect to a Previously Omitted Contract, and the relevant parties are unable to resolve the Contract Objection, such Contract Objection will be adjudicated at the Sale Hearing or, if the Sale Hearing date has passed, at such other date and time as may be fixed by the Court.

(viii)   For the avoidance of doubt, the inclusion of an executory contract or unexpired lease on Schedule 1 of the Cure Notice shall not obligate the Debtor to assume and assign any executory contract or unexpired lease listed thereon, and the rights of the Debtor, Stalking Horse Bidder, or other Successful Bidder to modify the list of Assigned Contracts, including to remove any contracts or leases from such list, are expressly reserved. Only those executory contracts and unexpired leases designated as Assigned Contracts at closing will be assumed and assigned to the Stalking Horse Bidder or other Successful Bidder, if applicable.

27.     The Cure Notice to be provided and the method of service proposed herein constitutes good, proper and adequate notice of potential assumption and assignment of the Debtor's executory contracts and unexpired leases and designation of Assigned Contracts and Cure Amounts. This information will provide contract counterparties with ample notice and opportunity to object pursuant to section 365 of the Bankruptcy Code. Accordingly, the Debtor requests the Court approve the form and content of, and procedures related to, the Debtor's proposed Cure Notice.

## V.  BASIS FOR RELIEF REQUESTED

### A.     The Bidding Procedures are Fair and are Designed to Maximize the Value Received  for the Assets Given the Financial Issues Facing the Debtor

28.     The Bidding Procedures proposed herein are designed to maximize the value received for the Assets by facilitating a bidding process in which all Potential Bidders are encouraged to participate and expend the time, energy and resources

necessary to submit competing bids, taking into account the financial issues facing the Debtor. The Bidding Procedures provide parties in interest with more than the twenty-one (21) days' notice envisioned by Bankruptcy Rule 2002.

29.     The Bidding Procedures allow the Debtor to consider all competing offers and to select the highest or best offer for the completion of a sale. The Bidding Procedures and Auction process will ensure the consideration ultimately given for the Purchased Assets will be fair, reasonable, and in the best interest of the Debtor's estate and creditors, and there are sound business reasons to approve the Bidding Procedures.

### B.     Designation of the Stalking Horse Bidder Is Appropriate.

30.     As discussed above, the Debtor made significantly wide efforts both before this case was filed as well as afterwards to identify potential buyers of the Assets.  Ultimately, the Stalking Horse Bidder's proposal was the highest and best received particularly in light of the fact the proposal does not require payment of a break-up fee or reimbursement of expenses commonly seen with stalking horse bids.

### C.     A Successful Bidder Should be Entitled to the Protections of Bankruptcy Code Section 363(m)

31.     Section 363(m) of the Bankruptcy Code provides that "the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith ...." 11 U.S.C. § 363(m). Under this section, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *See Miami Ctr.*

*Ltd. P'ship v. Bank of New York*, 838 F.2d 1547, 1554 (11th Cir. 1988); *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, Case No. 0351524, 2007 WL 1428477 (Bankr. D.N.J. May 11, 2007).

32.     As discussed above, the sale process and the Bidding Procedures contemplated as a part thereof (if and in whatever form approved by the Court at the Bidding Procedures Hearing) have been designed to create a fair, open and level playing field. The proposed transaction with the Stalking Horse Bidder has been negotiated by the parties at arm's length and in good faith.  While the Stalking Horse Bidder owns stock in the Debtor, the percentage interest owned is less than 4% of the outstanding shares.   Neither the Stalking Horse Bidder nor any of its officers or directors have ever been an officer or director of the Debtor.  As such the Stalking Horse Bidder and its affiliates are not: (i) "insiders" or affiliates of the Debtor; or (ii) have any relationship to the Debtor that has not been fully disclosed to the Court.

33.     Moreover, to the extent the Successful Bidder is not the Stalking Horse Bidder, the Debtor will demonstrate at the Sale Hearing that the final Asset Purchase Agreement with the Successful Bidder was negotiated at arm's-length, with each of the parties represented by its own advisors and counsel. Accordingly, the Debtor requests the Stalking Horse Bidder or other Successful Bidder submitting the Successful Bid be determined to have acted in good faith and be entitled to the protections of a good faith purchaser under section 363(m) of the Bankruptcy Code.

*See, e.g., In re United Press Int'l, Inc.*, No. 91 B 13955 (FGC), 1992 U.S. Bankr. LEXIS

842, at *3 (Bankr. S.D.N.Y. May 18, 1992).

**D.**    **The Debtor Has Exercised Sound Business Judgment and Provided
Adequate Notice and Opportunity to Object With Respect to
Assigned Contracts**

34.    Bankruptcy Code section 365(a) provides, in pertinent part, that a

debtor in possession "subject to the court's approval, may assume or reject any

executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The standard

governing bankruptcy court approval of a debtor's decision to assume or reject an

executory contract or unexpired lease is whether the debtor's reasonable business

judgment supports assumption or rejection. *In re Chateaugay Corp.*, 973 F.2d 141 (2d

Cir. 1992). Under the business judgment test, a court should approve a debtor's

proposed assumption if such assumption will benefit the estate. *In re Pinnacle

Brands, Inc.*, 259 B.R. 46, 53-54 (Bankr. D. Del. 2001). Moreover, the business

judgment standard requires that the court approve the debtor's business decision

unless that judgment is the product of bad faith, whim, or caprice. *See Lubrizol Enter.

v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985); *In re Prime

Motor Inns*, 124 B.R. 378, 383 (S.D. Fla. 1991). "More exacting scrutiny would slow

the administration of the debtors' estates and increase its cost, interfere with the

Bankruptcy Court's provision for private control of administration of the estate, and

threaten the court's ability to control a case impartially." *Richmond Leasing*, 762 F.2d

at 1311.

35.    Two conditions are imposed upon a debtor's ability to assume and assign

an executory contract. First,  to assume an agreement, pursuant to Bankruptcy Code

section 365(b)(1), a debtor must "cure, or provide adequate assurance that the debtor will promptly cure" any default, including compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1). Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract. Bankruptcy Code section 365(f) specifically provides that contract provisions seeking to prohibit or limit assignment are unenforceable. *See* 11 U.S.C. § 365(f)(1); *see also, e.g.*, *In re Office Prods. of Am., Inc.*, 140 B.R. 407, 409-410 (Bankr. W.D. Tex. 1992) (provisions that work as a restriction on assignment of leases should be struck down); *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("[t]he code generally favors free assignability as a means to maximize the value of the debtor's estate").

36.     Pursuant to Bankruptcy Code section 365(a), assignment is conditioned upon "adequate assurance of future performance [being] provided." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes. Inc. v. Arrari (In re Carlisle Homes,* Inc.*)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that the debtor will thrive). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *In re Bygaph, Inc.,* 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from the debtor has

financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

37.     Here, the Assigned Contracts (as may be finally determined in a Stalking Horse Agreement or Asset Purchase Agreement) are integral assets of the Debtor's business, and the Debtor has determined, in the exercise of its business judgment, that the assumption and assignment of such executory contracts and unexpired leases in connection with a sale of the Assets is appropriate to yield significant value and benefit to the Debtor and its estate from the sale.

38.     Further, the Stalking Horse Bidder, and any other Potential Bidder seeking to become a Qualified Bidder, must be an entity with financial resources adequate to perform under the respective executory contracts and unexpired leases. Additionally, the Debtor respectfully submits that the proposed cure procedures for the identification and payment of Cure Amounts are appropriate and reasonably tailored to provide non-Debtor counterparties to potential Assigned Contracts with adequate notice of the proposed assumption and assignment of their applicable contract, as well as the proposed Cure Amounts related thereto, if any. Such parties to the Assigned Contracts are given reasonable notice and opportunity to object to the proposed assumption and assignment and, in the event an objection is not resolved, this Court will adjudicate the dispute, including issues pertaining to adequate assurance of future performance. In light of the foregoing, the Debtor respectfully requests the Court approve the assumption and assignment of the executory contracts and unexpired leases in a Sale Order entered after the Sale Hearing.

**E.     The Sale of the Purchased Assets Is Authorized Under Bankruptcy Code Section 363(b)**

39.     At the conclusion of the Sale Hearing, the Debtor requests the Court enter the Sale Order approving the sale of the Purchased Assets to the Stalking Horse Bidder or Successful Bidder, as applicable. The Debtor submits that the sale of the Purchased Assets is in the best interest of the Debtor's estate and its creditors.

40.     Bankruptcy Code section 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve the use, sale or lease of property outside the ordinary course of business, this Court need only determine that the Debtor's decision is supported by "some articulated business justification," as established by the Second Circuit in *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070 (2nd Cir. 1983).

41.     The business judgment rule shields a debtor's management from judicial second-guessing. *See In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions"). Once a debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Thus, if a debtor's actions satisfy the business judgment rule, then

the transaction in question should be approved under section 363(b)(1) of Bankruptcy Code.

42.     When applying the business judgment standard, courts show great deference to a debtor's business decisions. *See In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval of a § 363 sale requires a showing that the proposed sale is fair and equitable, a good business reason exists for completing the sale and that the transaction is in good faith).

43.     The Debtor respectfully submits the proposed sale of Assets outside the ordinary course of business fits squarely within the parameters of the sound business judgment test. The Debtor has shown a sound business purpose for any transaction emanating from the sale or Auction process, including as a baseline, a transaction contemplated by a potential Stalking Horse Agreement, if applicable. As set forth above, the Debtor, in the business judgment of its management, has determined that it is in the best interest of the estate to consummate a sale of the Assets.

44.     The Debtor believes that any purchase price obtained pursuant to a Stalking Horse Agreement or other Asset Purchase Agreement during the marketing process will be fair and reasonable. Thus, if the Stalking Horse Bidder is selected, the Debtor will be prepared to close a transaction with the Stalking Horse Bidder even if no other Qualified Bid is submitted by a competing bidder. However, the fairness and reasonableness of the consideration ultimately delivered for the Assets by the Stalking Horse Bidder, or other Successful Bidder, will be conclusively demonstrated by the exposure of the opportunity to the marketplace in connection with the Bidding

Procedures. Accordingly, the Debtor submits that any sale presented in connection with this Sale Motion is warranted and appropriate under section 363(b) of the Bankruptcy Code, and the Sale Order should be entered by the Court.

**F.    The Sale of the Purchased Assets Free and Clear of Liens, Claims, and Interests Is Authorized Under Bankruptcy Code Section 363(f)**

45.    The Debtor requests the sale and transfer of the Assets be approved free and clear of all liens, claims, encumbrances and other interests (other than those specifically assumed by a Stalking Horse Bidder or other Successful Bidder), with all such interests attaching to the net sale proceeds of the Assets to the extent applicable. Such relief is consistent with the provisions of section 363(f) of the Bankruptcy Code in these types of cases.

46.    Bankruptcy Code section 363(f) authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

(1)    applicable non-bankruptcy law permits sale of such property free and clear of such interests;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). This provision is supplemented by Bankruptcy Code section 105(a), which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

47.     Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Purchased Assets free and clear of the interests. *In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale 'free and clear' provided at least one of the subsections of section 363(f) is met).

48.     The Debtor believes one or more of the tests under section 363(f) will be satisfied with respect to the transfer of the Purchased Assets pursuant to a Sale Order.

**G.**     **The Form, Manner and Extent of Notice of the Sale Motion and the Proposed Sale are Appropriate and Adequate Under the Circumstances**

49.     The Debtor will serve the Bidding Procedures, Sale Notice, and Cure Notice in accordance with the Bidding Procedures Order and will serve this Sale Motion as set forth below. The notice of the proposed sale to be provided by the Debtor as set forth herein and in the Bidding Procedures Order sufficiently describes the terms and conditions of the proposed sale.

50.     Several sections of the Bankruptcy Code and Bankruptcy Rules dictate the sufficiency of notice and adequacy of service. As discussed below, the content and manner of service of this Sale Motion and the related notices satisfy all such requirements:

    a.     Bankruptcy Code Section 363 – Bankruptcy Code section 363 provides that a trustee may sell property "after notice and hearing." Under Section 102(1) of the Bankruptcy Code, the phrase "after notice and hearing" means "notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in

the particular circumstances." 11 U.S.C. § 102(1)(A). As set forth above, creditors have been, and will be, provided notice of the salient details regarding this Sale Motion and the Sale Hearing. Accordingly, notice is sufficient under Bankruptcy Code section 363.

b.    <u>Bankruptcy Rule 2002</u> – Bankruptcy Rule 2002 requires twenty-one (21) days' notice of the proposed sale of property other than in the ordinary course of business. In addition, Bankruptcy Rule 2002 provides that notice of a sale shall "include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections." FED. R. BANKR. P. 2002. As set forth above, the notice of this Sale Motion that has been, and will be, provided by the Debtor satisfies each of these requirements.

c.    <u>Bankruptcy Rules 6004 and 6006</u> – Bankruptcy Rule 6004 requires that notice of sales of property out of the ordinary course of business comply with Bankruptcy Rule 2002. As set forth above, the Debtor has complied with Bankruptcy Rule 2002. Bankruptcy Rule 6006 requires notice of a motion to assume and assign an executory contract or unexpired lease to be served on the counterparty to such contract or lease, as well as on other parties in interest as the Court may direct. The Cure Notice will be served on counterparties to the Debtor's executory contracts and unexpired leases, thereby satisfying this requirement. Bankruptcy Rule 6004(c) requires service of a motion for authority to sell property free and clear of liens and other interests on parties who have liens or other interests in the property to be sold. A copy of this Sale Motion will be served on parties claiming liens or interests in the Debtor's Assets.

d.    <u>Procedural Due Process</u> – The notices of this Sale Motion that are being provided as described herein are "reasonably calculated" to apprise interested parties of the pendency of the matter and to afford them an opportunity to object. See *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). Parties in interest have been and should be found to have been afforded adequate notice of this Sale Motion, the sale, the Bidding Procedures and the other relief requested herein.

51.    The Debtor submits the notice it has provided and intends to provide as outlined above with respect to the proposed Sale, the Bidding Procedures, and Cure Amounts, as applicable, is reasonable and appropriate and constitutes good and adequate notice of the sale of the Assets as Purchased Assets, and the procedures and proceedings related thereto and therefore should be approved by this Court.

**H.**    **The Stay of the Sale Order Should be Waived**

52.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale or lease of property ... is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease ... is stayed until the expiration of the 14 days after the entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6006(d).

53.    The Debtor requests that any Sale Order be effective immediately by providing that the 14-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived, including with respect to any executory contracts and unexpired leases. To require the Debtor to effectively be liable under the applicable executory contracts and/or unexpired leases for an extra fourteen (14) days and to delay the closing and the resulting reductions of the Debtor's obligations and related adequate protection obligations will burden the estates and require unnecessary expenditures of the Debtor's limited resources.

## VII.    REQUESTED RELIEF.

WHEREFORE, the Debtor respectfully requests that the Court (i) enter the Bidding Procedures Order after the Bidding Procedures Hearing (a) authorizing the Debtor to implement the Bidding Procedures and conduct a marketing and sale process under section 363 of the Bankruptcy Code, and (b) approving the Stalking Horse Protections payable to a Stalking Horse Bidder, if any; (ii) enter the Sale Order (to be filed as a proposed order at a later date) after the Sale Hearing (a) authorizing

the Debtor to sell substantially all of its assets as Purchased Assets to the Stalking

Horse Bidder or Successful Bidder free and clear of all liens, claims, encumbrances

and other interests, and (b) authorizing the Debtor to assume and assign the Assigned

Contracts to the Stalking Horse Bidder or Successful Bidder; and (iii) grant such

other and further relief as the Court may deem just and proper.

## NOTICE

54.     Notice of this Motion has been provided to: (i) Office of the United States

Trustee for the Southern District of New York; (ii) 20 largest unsecured creditors; (iii)

Key 7; (iv) any other party whose interests are directly affected by the Motion; and

(v) those persons who have formally appeared and requested notice and service in

these Chapter 11 Cases (collectively, "**Notice Parties**"). Debtor submits that such

notice complies with Local Rule 4001-2(e), and respectfully submits that no other or

further notice of this Motion is required.

## NO PRIOR REQUEST

55.     No prior request for the relief sought herein has been made to this or

any other court.

## CONCLUSION

**WHEREFORE**, Debtor respectfully requests entry of the Bidding Procedures

Order and such other and further relief as is just and proper.

| Dated:   New York, New York<br>August 14, 2024 | **LAW OFFICES OF**<br> **GABRIEL DEL VIRGINIA**<br>By: /s/   *Gabriel Del Virginia*<br>Gabriel Del Virginia, Esq.<br>30 Wall Street, 12th Floor<br>New York, New York 10005<br>PHONE: 212-371-0460<br>Email: *gabriel.delvirginia@verizon.net*<br><br>*Proposed Counsel to Debtor StoryFile,*<br>*Inc.* |
|---|---|

## Schedule 1

## [To Be Supplemented]

.

## Schedule 1

## [To Be Supplemented]